IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN ANDERSON,**<br><br>Plaintiff,<br><br>v<br><br>**JAMES GOGA** *as an individual and in his official capacity*, **CITY OF PITTSBURGH** *a political subdivision*, **ALISHA HARNETT** *as an individual and in her official capacity*, **JUANITA MITCHELL** *as an individual and in her official capacity*, **ALLEGHENY COUNTY** *a political subdivision*, **CHARISSE BOLDEN** *an individual* and **NICHO BOLDEN-ANDERSON** *an individual*,<br><br>Defendants. | 2:11-cv-528 |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending now before the Court is the MOTION TO DISMISS COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6), filed by Defendants James Goga and the City of Pittsburgh (Doc. No. 13), with brief in support (Doc. No. 15), and Plaintiff's brief in opposition to the motion to dismiss (Doc. No. 16).

This is a civil rights action filed by Plaintiff John Anderson against Pittsburgh Detective James Goga; the City of Pittsburgh; Allegheny County; two caseworkers employed by the Allegheny County Office of Children, Youth and Families ("CYF")(Alisha Harnett and Juanita Mitchell); and Plaintiff's ex-wife and step daughter (Nicho Bolden-Anderson and Charisse Bolden). Defendants Allegheny County, Alisha Harnett, and Juanita Mitchell (the "Allegheny County Defendants") have answered Plaintiff's complaint. *See* Doc. No. 10. The motion to

dismiss has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted in part and denied it in part.

I. **Background**

A. Statement of Facts[1]

The allegations in the complaint center around Plaintiff's arrest on or about April 22, 2009 pursuant to an arrest warrant on charges of rape, statutory sexual assault, and involuntary deviate sexual intercourse with a minor. Compl. at ¶¶ 12, 39. By way of background, in the years preceding the 2009 arrest, Plaintiff and Defendant Nicho Bolden-Anderson (Defendant ex-wife), were involved in a prolonged divorce and custody dispute over their two children. Compl. at ¶ 13. Plaintiff and Defendant ex-wife had one child born during their marriage, a minor child identified in the complaint as "JA". Compl. at ¶ 14. Defendant Charisse Bolden (Defendant step-daughter) is the daughter of Defendant ex-wife from a prior relationship, and lived with Plaintiff and Nicho Bolden-Anderson during their marriage. *Id.* The custody disputes between the former spouses involved custody of JA. Compl. at ¶ 15. Plaintiff alleges that over the course of the custody dispute, Defendant ex-wife "had a custom and practice of falsely alleging that Plaintiff was violent in an attempt to manipulate the custody dispute." Compl. at ¶ 16.

A number of events occurred in the months leading up to Plaintiff's arrest that relate to the claims *sub judice*. A consent order dated December 30, 2008, was entered into by the parties in which they agreed that Defendant ex-wife would have custody of Defendant step-daughter, while Plaintiff would have custody of JA. Compl. at ¶ 18. During this same period, Defendants Mitchell and Harnett were assigned as CYF caseworkers for the family. Compl. at ¶ 19.

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the Court will present the facts as alleged in the complaint. *See infra* Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of the cause of action have been disregarded. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).

2

Defendant Harnett was specifically assigned to investigate allegations of physical abuse of Defendant step-daughter made against Plaintiff by Defendant ex-wife. Compl. at ¶¶ 20 & 21. On February 2, 2009, Defendant Harnett completed her investigation and found the allegations of physical abuse to be "unfounded". Compl. at ¶ 21. Two days later, Defendants ex-wife and step-daughter reported to Defendant Mitchell that Plaintiff had sexually abused Charisse Bolden since December of 2006. Compl. at ¶ 22. Defendant Harnett was once again assigned to investigate the allegations. Compl. at ¶ 23. As part of that investigation, she interviewed Plaintiff on two different occasions, once on February 13, 2009, and again on March 20, 2009. Compl. at ¶¶ 24 & 25.

In both interviews, Plaintiff denied the allegations. *Id*. Further, Plaintiff alleges in his complaint that he provided information of the type to cast suspicion over the veracity of Defendant step-daughter's claims; such as, claiming that he had not been sexually active since 2000 as the result of sustaining a serious back injury; claiming that Defendant step-daughter had previously reported being raped by a friend of her mother, and that she even has been diagnosed with post-traumatic stress disorder as a result of the event; claiming his belief that Defendant step-daughter had been sexually active with her boyfriend since 2006; and, that he was not even present at one of the locations in which an alleged assault occurred. Compl. at ¶ 25. Also, prior to the interviews, Plaintiff had obtained a copy of Defendant step-daughter's journal, which he shared with Defendant Harnett for the purpose of pointing out that Charisse never referenced being sexually assaulted by him. *Id*.

Charisse Bolden's allegation of sexual abuse by Plaintiff was reported by CYF to the Bureau of Police for the City of Pittsburgh, and subsequently assigned to Defendant Detective Goga. Compl. at ¶¶ 26 & 27. Defendant Goga interviewed Defendant step-daughter on two

3

occasions, over the course of which she alleged that Plaintiff raped her, and further, that she was told by Plaintiff that she "could not tell anyone or that both Plaintiff and [Defendant step-daughter] would get in trouble." Compl. at ¶ 30. Defendant Goga was also in contact with Defendants Mitchell and Harnett during the course of the investigation, but at no point did he interview Plaintiff. Compl. at ¶¶ 31 & 32. On April 5, 2009, Defendant Goga filed a criminal complaint that charged Plaintiff with one count of rape, one count of statutory sexual assault, and one count of involuntary deviate sexual intercourse. Compl. at ¶ 36. Attached to the criminal complaint was an affidavit of probable cause prepared by Defendant Goga. Compl. at ¶ 37. An arrest warrant was issued, and Plaintiff was arrested on April 22, 2009. Compl. at ¶¶ 39 & 40. He was released on $25,000.00 bail. "Plaintiff remained charged with the above-described offenses until January 24, 2011, on which date the Allegheny District Attorney moved for a Nolle Prosse on the date of trial when Defendant Charisse Bolden refused to attend trial to testify against Plaintiff." Compl. at. ¶ 40.

## II. Standard of Review

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). Under the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. *Id.* at 544. In other words, the allegations of the complaint must be

grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. *Id.* Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. *Id.* at 1949–50; *see also Twombly*, 550 U.S. at 563 n. 8 (a complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) & *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)); accord *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'")).

This is not to be understood as imposing a probability standard at the pleading stage. *Iqbal*, 129 S.Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir.2008) (same). Instead, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Phillips*, 515 F.3d at 235; *see also Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 321 (3d Cir.2008)("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.' ") (quoting *Phillips*, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

**III.     Analysis**

A.     <u>Counts I, V, and VI:  Claims against Defendant Detective Goga</u>

Plaintiff essentially brings five claims organized in the complaint into three counts against Defendant Goga: 1) a Fourth Amendment claim pursuant to 42 U.S.C. § 1983 at Count I for both false arrest and malicious prosecution; 2) a pendent state law claim of malicious prosecution at Count V; and 3) a pendent state law claim for both false arrest and false imprisonment at Count VI. *See* Compl. For the purpose of the pending motion to dismiss, however, the challenges to all counts alleged against Defendant Goga turn upon the common element that Defendant Goga lacked probable cause to take any action against Plaintiff.

In Count I, Plaintiff alleges that probable cause was lacking for both his arrest and his subsequent prosecution "in light of the exculpatory information and the failure of Detective Goga to complete an adequate investigation under the circumstances." Compl. at ¶ 46. To that end, Plaintiff alleges a specific failure on the part of Defendant Goga that "manifested this actual malice and/or reckless indifference to the rights of Plaintiff", namely, the failure to interview Plaintiff. Further, Plaintiff more generally argues that Defendant Goga failed to conduct a reasonable investigation into the allegations by failing to consider and include exculpatory information into the affidavit of probable cause, which he either knew, or should have known, through his contact with Defendants Harnett and Mitchell. Compl. at ¶ 50. Likewise, the pendent state law claims alleged at Counts V and VI are also premised upon actions taken by Defendant Goga "without probable cause". Compl. at ¶¶ 73 and 80.

In the motion to dismiss, Defendant Goga argues that Plaintiff's claims for malicious prosecution, false arrest, and false imprisonment should be dismissed for two reasons. *See* Doc. No. 15. Generally speaking, he argues that Plaintiff's complaint does not and cannot plausibly allege that Defendant lacked probable cause to pursue his arrest and criminal prosecution. In the alternative, he argues that he is entitled to qualified immunity. The Court will address each contention *seriatim*.

    1.    <u>Probable Cause</u>

To set forth cognizable section 1983 claims for malicious prosecution and false arrest, a plaintiff must allege that the police lacked probable cause to arrest her and to initiate criminal proceedings. *Pollack v. City of Phila.*, 403 F. App'x 664, 669 (3d Cir.2010) (stating that § 1983 claim for false arrest requires showing that police lacked probable cause for arrest) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir.1988)); *Johnson v. Knorr*, 477 F.3d 75, 81–

7

82 (3d Cir.2007) (stating that § 1983 claim for malicious prosecution requires a showing that defendant initiated criminal proceeding without probable cause) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003)). In false arrest cases, "'[p]robable cause exists when [ ] reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.'" *Pollack*, 403 F. App'x at 669 (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir.2002)).

The applicable precedents recognize that "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Instead, it requires only a reasonable belief that the individual arrested probably committed the relevant criminal offense. *See Thacker v. City of Columbus*, 328 F.3d 244, 256 (6th Cir. 2003). In *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit explained that probable cause determinations must be made with reference to the "totality of the circumstances", and that courts should avoid the temptation to over-compartmentalize such determinations. "Probable cause 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003)(quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). In a § 1983 case, whether probable cause exists is ordinarily a question of fact for the jury. *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998).

In this case, Plaintiff does not assert that the affidavit of probable cause, on its face, did not support a finding of probable cause. Rather, he contends that the affidavit of probable cause was false and misleading because it omitted certain exculpatory facts, and that a truthful and complete warrant application would not have established the requisite probable cause. To state a § 1983 claim on such a theory, Plaintiff must allege: (1) that the police "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created the falsehood in applying for the warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir.2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997)). An officer acts with reckless disregard in omitting information from an affidavit if he omits known information that "any reasonable person would have known ... the judge would wish to know." *Id.* at 788 (quotation omitted). "To determine the materiality of ... omissions, we ... insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 789 (quoting *Sherwood*, 113 F.3d at 400).

At this stage, none of the arresting documents, including the criminal complaint, application for the arrest warrant, or the affidavit of probable cause in support of the warrant application, are before the Court. As such, the analysis of the motion to dismiss is limited to the description of the criminal investigation conducted by Defendant Goga germane to the issue of probable cause as alleged within the complaint. In terms of the factual predicate for the crimes for which Plaintiff was arrested, the complaint alleges the following:

> 28. On February 18, 2009, Defendant Goga made arrangements with Defendant Nicho Bolden-Anderson for her to bring Defendant Charisse Bolden to police headquarters for an interview.
>
> 29. Detective Goga ultimately interviewed Defendant Charisse Bolden twice.

30. In these interviews, Defendant Charisse Anderson falsely alleged that Plaintiff anally, vaginally, and orally raped her and told her that she could not tell anyone or that both Plaintiff and Charisse Anderson would get in trouble.

31. Defendant Goga never attempted to interview Plaintiff.

Compl.[2] Here, apparently the factual predicate for the probable cause determination was established entirely with information obtained from the interview of Defendant Charisse Bolden, and further that the affidavit of probable cause satisfied a magistrate's determination that probable cause existed to arrest Plaintiff, given the fact that an arrest warrant was issued on April 5, 2009. Compl. at ¶ 39.

Plaintiff alleges in the complaint that Defendant Goga falsely and misleadingly omitted from the affidavit of probable cause the "Exculpatory Information" that he provided to Defendant Harnett of the Allegheny County CYF regarding the allegations. Compl. at ¶ 35 (referring to the "exculpatory information" provided by Plaintiff to Defendant Harnett over the course of two interviews, as detailed in ¶¶ 24 and 25). The complaint further alleges that Defendant Goga was in contact with both Defendants Harnett and Mitchell as part of the criminal investigation, and that, under Plaintiff's information and belief, Defendant Harnett discussed her interviews of Plaintiff with Defendant Goga prior to the filing of the criminal complaint and the arrest warrant. Compl. at ¶ 32.

At this stage of the proceeding, the Court has little difficulty finding that these alleged factual omissions, alleged to be both true and known to Defendant Goga, would suggest the required element for Plaintiff's claims that such facts would have been pertinent to the essential inquiry into probable cause. Plaintiff alleges that he provided Defendant Harnett with alibi

---

[2] The Court notes that for the purpose of considering the motion to dismiss, Plaintiff's specific characterization in paragraph 30 of the complaint that Charisse Bolden's claims to Defendant Goga were 'false' is a legal conclusion cast as a factual allegation, and therefore will not be considered for the purpose of the 12(b)(6) analysis.

10

information regarding himself, both in terms of location for one of the alleged attacks as well as for his physical condition, and that he further provided information about the alleged victim's mental condition, her previous history of sexual assault accusations, and other information sufficient to cast doubt on the veracity of Charisse Bolden's accusations. While nowhere does the determination of probable cause require that the alleged perpetrator be interviewed by police, the complaint alleges knowledge of Plaintiff's so-called "exculpatory information" by Defendant Goga through Goga's contacts with Defendants Harnett and Mitchell. If true, Plaintiff has sufficiently alleged Defendant Goga held information that was of the type that "any reasonable person would have known ... the judge would wish to know." *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir.2000). Accordingly, the Court finds that the complaint sets forth sufficient facts to support a reasonable inference that Defendant acted with reckless disregard for the truth by omitting the above-mentioned information from the affidavit of probable cause.

2. Qualified Immunity

Defendant Goga argues, in the alternative, that the Court should dismiss the claims of false arrest, malicious prosecution, and false imprisonment because he is entitled to qualified immunity. Under the qualified immunity doctrine, "law enforcement officers acting within their professional capacity are generally immune from trial 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir.2000) (quoting *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). In assessing the viability of a qualified immunity defense, courts perform a two-step analysis. The first question is "'whether the plaintiff has alleged the deprivation of an actual constitutional right.'" *Id.* (quoting *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)). Second, the question

becomes "'whether that right was clearly established at the time of the alleged violation.'" *Id.* (quoting *Conn*, 526 U.S. at 290)).

As detailed above, the Court has already concluded that Plaintiff has plausibly alleged that the affidavit of probable cause contained material omissions that, if incorporated, would not have established probable cause. Defendant nevertheless argues that he is entitled to qualified immunity because he acted in a way that he reasonably believed to be lawful. *See* Doc. No. 15 at ¶ 10 (citing, *inter alia, Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In this regard, he emphasizes that, once probable cause is established, "an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." Doc. No. 15 at ¶ 11 (quoting *Ahlers v Schebil*, 188 F.3d 365, 371 (6th Cir. 1999)). While that may be the case, Plaintiff, for his part, has plausibly alleged that Defendant recklessly disregarded other material, exculpatory facts.

Ultimately, the viability of Defendant Goga's qualified immunity defense will turn on the reasonableness of his belief that he had probable cause based on "the information that [Defendant] had available to [him]" at the time he completed the affidavit of probable cause. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). Because Plaintiff has plausibly alleged that at the time Defendant Goga completed the affidavit of probable cause, he knew facts that should have changed his assessment of probable cause, the complaint adequately alleges that Defendant Goga did not act reasonably but, rather, unreasonably disregarded known, exculpatory information. Accordingly, the Court will not dismiss Plaintiff's claims against Defendant Goga at this stage based on qualified immunity. Rather, Plaintiff will have the opportunity to develop record evidence to support the plausible allegations that Defendant knowingly disregarded material facts and, therefore, did not act reasonably. *See, e.g., Greunke v. Siep*, 225 F.3d 290,

299–300 (3d Cir.2000) (stating that determining "'whether a reasonable public official would know that his or her specific conduct violated clearly established rights'" requires "fact-intensive analysis") (quoting and citing *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir.1996)). Consequently, the Court will deny Defendant Goga's motion to dismiss insofar as it seeks dismissal of Plaintiff's false arrest, malicious prosecution, and false imprisonment claims on the basis of qualified immunity.

B.    Count II:  Claim against Defendant City of Pittsburgh

Section 1983 claims against a municipality are significantly different than those against individual officials. The Supreme Court has held that municipalities and other local government units qualify as "persons" subject to liability under § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, a municipality cannot incur § 1983 liability based on a theory of *respondeat superior*. *Id.* at 691, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. Rather, § 1983 imposes liability only where a plaintiff identifies either "a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690–91, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. The Court of Appeals for the Third Circuit has refined these definitions, explaining that policy or custom may be established (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict," or (2) through a "course of conduct ... when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (citations and quotations omitted). These standards ensure

13

that municipalities may incur liability only for deprivations resulting from the decisions of "those officials whose acts may fairly be said to be those of the municipality." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *see also Banegas v. Hampton*, No. CIV.A. 08–5348, 2009 WL 1098845, at *3 (E.D.Pa. Apr.22, 2009).

Plaintiff's sole claim against Defendant City of Pittsburgh is that the "actions and omissions made by Defendant Goga, were made in accordance with a broader policy and/or custom of the City of Pittsburgh." Compl. at ¶ 56. This policy and/or custom, according to the complaint, resulted in a number of itemized failures on the part of the City of Pittsburgh, to include: a failure to train Defendant Goga "in how to investigate allegations of sexual abuse"; a failure to train Defendant Goga "on how to write an affidavit of probable cause in support of an arrest warrant"; and a failure to properly supervise Defendant Goga's investigation. Compl. at ¶ 56 (a) – (c).

"Where ... the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir.1999)(quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "In order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (citing *Walker v. City of New York*, 974 F.2d 293,297-98 (2d Cir.1992)). Here, nowhere in the complaint does Plaintiff allege any facts to support an inference that the City of Pittsburgh

14

follows a deficient policy or custom that results in the constitutional violations. Further, nowhere does the complaint identify any particular policy in terms of conducting investigations, nor set forth any facts which would suggest the absence thereof. To the contrary, the complaint does nothing more than reference the alleged constitutional violations of Defendant Goga and imputes the violations to the City of Pittsburgh as the result of some unspecified a policy or custom. Such conclusory and speculative accusations fail to state a claim of municipal liability on the part of the City of Pittsburgh, and will be dismissed.

**IV. Conclusion**

For the reasons set forth herein, the Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12 (b)(6) filed by Defendants Goga and the City of Pittsburgh will be granted in part and denied in part. An appropriate order follows.

McVerry, J.

<pre>
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
</pre>

| | |
|---|---|
| **JOHN ANDERSON,** | ) |
| | ) |
| **Plaintiff,** | ) 2:11-cv-528 |
| v | ) |
| **JAMES GOGA** *as an individual and in his official capacity*, **CITY OF PITTSBURGH** *a political subdivision*, **ALISHA HARNETT** *as an individual and in her official capacity*, **JUANITA MITCHELL** *as an individual and in her official capacity*, **ALLEGHENY COUNTY** *a political subdivision*, **CHARISSE BOLDEN** *an individual* and **NICHO BOLDEN-ANDERSON** *an individual*, | ) |
| **Defendants.** | ) |

## ORDER OF COURT

AND NOW, this 5th day of October, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the MOTION TO DISMISS COMPLAINT PURSUANT TO FED.R.CIV.P. 12 (b)(6), filed by Defendants James Goga and the City of Pittsburgh at Doc. No. 13, is **GRANTED IN PART** and **DENIED IN PART**:

a) Defendants' motion is **GRANTED** in the following respect: Count II alleging constitutional violations against Defendant City of Pittsburgh is **DISMISSED**; and,

b) Defendants' motion to dismiss is **DENIED** in all other respects.

It is further **ORDERED** that Defendant Goga shall file an Answer to the remaining claims set forth in the Complaint on or before October 19, 2011.

It is further **ORDERED** that the caption of this case is amended as follows:

| | |
|---|---|
| **JOHN ANDERSON,** | ) |
| | ) |
| **Plaintiff,** | ) 2:11-cv-528 |
| | ) |
| v | ) |
| | ) |
| **JAMES GOGA** *as an individual and in his official capacity*, **ALISHA HARNETT** *as an individual and in her official capacity*, **JUANITA MITCHELL** *as an individual and in her official capacity*, **ALLEGHENY COUNTY** *a political subdivision*, **CHARISSE BOLDEN** *an individual* and **NICHO BOLDEN-ANDERSON** *an individual*, | ) |
| | ) |
| **Defendants.** | ) |

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Peter H. Kurzweg, Esquire**
Email: pkurzweg@pittsburghlitigationfirm.com

**Michael E. Kennedy, Esquire**
Email: michael.kennedy@city.pittsburgh.pa.us

**Caroline Liebenguth, Esquire**
Email: cliebenguth@county.allegheny.pa.us
**Michael H. Wojcik, Esquire**
Email: mwojcik@county.allegheny.pa.us