# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ANDERSON, | ) | |
| Plaintiff, | ) | Civil Action No. 11-528 |
| v. | ) | Judge Cathy Bissoon |
| JAMES GOGA, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 55) will be granted.

### BACKGROUND

Plaintiff has brought this action under Section 1983, claiming that his civil rights were violated in connection with his arrest for the alleged sexual assault of his step-daughter. *See generally* Compl. (Doc. 1). The charges against Plaintiff were dropped because the alleged victim did not appear for trial. *See* Doc. 59 at ¶ 12 (Pl.'s Resp. to Def.'s Stmt. of Facts).

The only remaining Defendant, Mr. Goga, was the arresting police officer, and his request for summary judgment turns on whether he had probable cause to arrest Plaintiff. *Compare* Compl. at Count I (alleging false arrest and malicious prosecution) *with* Hernandez v. City of Union City, 2008 WL 364275, *3 (3d Cir. Feb. 12, 2008) (probable cause is "absolute defense" to claims of false arrest and malicious prosecution) (citation to quoted source omitted).

In support of his affidavit of probable cause, Defendant twice interviewed the alleged victim, once by herself at police headquarters, and once at her residence in the presence of her mother. *See* Def.'s Stmt. of Facts (Doc. 57) at ¶ 7 *and* Pl.'s Resp. (Doc. 59) at ¶ 7 (admitting same). During her interviews, the alleged victim claimed that Plaintiff had raped her, vaginally, anally and orally. *Id.* The narrative portion of Defendant's affidavit contains detailed accounts of the alleged victim's statements, and the contents of the narrative portion are incorporated herein by reference. *See* Doc. 57-4 at pgs. 5 through 8 of 8.[1]

In opposing summary judgment, Plaintiff claims that Defendant exhibited a "reckless disregard for the truth" because his affidavit failed to identify potentially exculpatory information that he knew of or reasonably should have known. *See generally* Pl.'s Opp'n Br. (Doc. 58) at 3, 9. Most prevalent is Plaintiff's contention that Defendant should have revealed Plaintiff's claim to having suffered erectile dysfunction at the time of the alleged assaults. *See id.* at 3, 6-9, 17-18 & n.2. Plaintiff also identifies a series of other purported omissions, namely: that the alleged victim provided inconsistent descriptions of the sexual assaults; that the alleged victim's brother, a minor and the son of Plaintiff, supported his father's innocence; that the alleged victim's diary contained no mention of the sexual assaults; that the alleged victim also claimed to previously have been sexually assaulted by a different man, resulting in

---

[1] *See, e.g., id.* at pg. 6 of 8 ("[W]hile at [Plaintiff's] house[, the alleged victim] slept in the living room on the first floor which was converted into her bedroom. It was the weekend following her 16th birthday, possibly a Friday night. While she was in bed[, Plaintiff] entered her room naked and got into bed with her. He stated, 'Don't say anything, your brother is upstairs [a]sleep.' He began to undress her. [Plaintiff] removed her underwear, shorts, bra, and 'wife beater.' [Plaintiff] put a condom on his penis. [The alleged v]ictim was lying on her back in the bed when [Plaintiff] penetrated her vagina with his penis. I asked if [Plaintiff] ejaculated. She stated he most often does. I asked has this happened more than once? She [a]nswered, 'Yes.' She went on to say, 'I'm sure he came that time because the condom broke inside me. He went inside me with his fingers to get it all out.' . . . [Afterwards, Plaintiff said, 'd]on't tell anyone, I'll get in trouble, and you will get in trouble.' [The alleged v]ictim was visibly upset. She was crying and shaking. She was unable to continue our conversation at that time.").

her suffering post traumatic stress disorder; that, two days before the alleged victim's instant allegations, a county case worker, with whom Defendant had communicated during the course of his investigation, found the alleged victim's prior accusation of sexual abuse against Plaintiff "unfounded"[2]; and that Plaintiff, when interviewed by the case worker, shared versions of events that were inconsistent with the alleged victim's statements.[3] *See* Pl.'s Opp'n Br. at 3 (listing, in bullet-point form, exculpatory evidence purportedly omitted from Defendant's affidavit).

**LEGAL STANDARDS**

Probable cause exists where the facts and circumstances within the officer's knowledge, at the time of the arrest, are sufficient to warrant a reasonable person to believe that an offense had been committed. Schirmer v. Penkethman, 2012 WL 6738757, *8 (D. N.J. Dec. 31, 2012) (citation to published Third Circuit authority omitted). What matters is the information known at the time of the arrest, not what the officer *could* have known had he accepted the accused's story and/or collected evidence as the accused may have wished. Tavernaris v. City of Beaver Falls, 2008 WL 2571469, *2 (W.D. Pa. Jun. 25, 2008); *accord* Stahl v. Czernik, 2012 WL 3668013, *5 (6th Cir. Aug. 27, 2012).

---

[2] The case worker was Alisha Harnett, who was named as a Defendant in this case, but later was voluntarily dismissed with prejudice. *See* Doc. 60. According to Ms. Harnett's testimony, she found the alleged victim's prior report of sexual abuse "unfounded" based on a lack of physical evidence, despite her nevertheless having "believe[d she]" found credible the alleged victim's complaints. *See* Dep. Tr. of A. Harnett (filed under Doc. 57-3) at 76. Although Plaintiff challenges the relevance of Ms. Harnett's credibility determination and highlights purported inconsistencies in her testimony, these disputes are immaterial for the purposes of the Court's analyses.

[3] Defendant did not interview Plaintiff before arresting him. *See* Pl.'s Resp. to Def.'s Facts at ¶ 8 (admitting same). Plaintiff proceeds on the theory that, first, Plaintiff shared information with the case worker, who, then, communicated the information to Defendant. *See generally* Pl.'s Opp'n Br. at 4-6. As will be discussed below, Plaintiff's evidence in this regard is weak, and in any event, it does not defeat a finding of probable cause.

3

Once probable cause is established, an officer has no duty to search for exculpatory evidence or to further investigate the circumstances surrounding the incident. Tavernaris at *2; *accord* Crouch v. City of Hyattsville, 2012 WL 6019296, *7 (D. Md. Nov. 30, 2012) (once officer "has crossed the threshold of probable cause, [the courts do] not place upon him the additional burden of seeking out and negating [all] possible explanations of guilt") (citation to quoted source omitted); Pearson v. Lorancaitis, 2012 WL 162355, *10 (D. Conn. Jan. 19, 2012) ("[an officer] is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest") (citation to quoted source omitted). The Court must reject after-the-fact invitations to view the circumstances "as an omniscient observer would perceive them," or to evaluate the officer's performance "with the benefit of 20/20 hindsight." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006) (citation to quoted source omitted); Harris v. Jacobs, 2012 WL 4109052, *7 (E.D. Pa. Sept. 19, 2012).

Furthermore, the probable cause inquiry is not merely a forum for a purported victim of wrongful accusation to cast judgment on the thoroughness of the officer's investigation. *See* Mikhaeil v. Santos, 2012 WL 6554093, *3 (D. N.J. Dec. 14, 2012) ("the question . . . is not whether the detectives conducted a thorough investigation," but whether "their investigation was sufficient to establish probable cause"); *see also, e.g.*, Stahl, 2012 WL 3668013 at *5 (reversing district court's denial of summary judgment in favor of officer, based on finding of probable cause, even though "some officers might have conducted a more thorough investigation"); Ahlers v. Schebil, 188 F.3d 365, 372 (6th Cir. 1999) (affirming finding of probable cause where officer's investigation "certainly was no model of thoroughness and left many reasonable sources of evidence unexplored"). Rather, the inquiry is informed by the societal needs for allowing officers to perform valuable law enforcement functions, timely and free from remonstration,

4

so long as their limited role in the criminal justice process reasonably is fulfilled. *See* Stahl at *5 (requiring officer to "sift through [records] for potentially exculpatory evidence before applying for a warrant . . . would waste valuable time and resources, and impede the police's ability to make a timely arrest") (emphasis added); Pearson, 2012 WL 162355 at *10 (police officers' "function is to apprehend those suspected of wrongdoing, . . . not to finally determine guilt through a weighing of the evidence"; "they are neither required nor allowed to sit as prosecutor, judge or jury") (citations to quoted sources omitted); *see also* Schirmer, 2012 WL 6738757 at *8 (probable cause is not intended to "require that officers correctly resolve conflicting evidence or [to show] that their determinations of credibility, were, in retrospect, accurate") (citation to quoted source omitted).

Here, Defendant's affidavit of probable cause was based on the testimony of the alleged victim. In this context, many courts have held that such evidence presumptively is sufficient to establish probable cause. *See, e.g.*, U.S. v. Shaw, 464 F.3d 615, 623 (6th Cir. 2006) ("[a]n eye witness's statement that he or she . . . was the victim of a crime is generally sufficient to establish probable cause"); Wooleyhan v. Cape Henlopen Sch. Dist., 2011 WL 1875710, *9 (D. Del. May 17, 2011) ("[w]hen police receive a reliable identification by a victim of his or her attacker, the police have probable cause to arrest"; "[p]olice can assess the victim's demeanor, find the story credible, and rely on the identification to make an arrest"). This presumption takes on even greater weight within the context of alleged sexual misconduct. *See, e.g.*, Ullah v. Office of Dist. Atty., 2009 WL 2151357, *6 (S.D.N.Y. Jul. 20, 2009) (collecting cases finding that victim statements are sufficient to create probable cause, and noting "the inherent 'he said, she said' nature unfortunately present in many cases of sexual assault"); Schnitter v. City of Rochester, 2013 WL 821189, *6 (W.D.N.Y. Mar. 5, 2013) (wife's statement that she had witnessed

5

plaintiff-husband sexually assault their child was sufficient to establish probable cause, and, in this context, "[e]yewitness testimony will generally" suffice); Madyun v. City of Memphis, 2000 WL 1871724, *1 (6th Cir. Dec. 12, 2000) (finding probable cause where detective's "investigation was required by law," and was supported by detective's "initial interview with the children and their grandmother").

Also as referenced above, Defendant did not interview Plaintiff and elicit his version of events. This is neither uncommon, nor a barrier to probable cause. *See* Pearson, 2012 WL 162355 at *10 ("a finding of probable cause is not foreclosed where a police officer is presented with different stories from an alleged victim and an arrestee," and "[the] failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause") (citation to quoted source omitted); Forde v. Home Depot, 2011 WL 6372090, *4 (E.D. Pa. Dec. 20, 2011) (officer "is under no obligation to give any credence to a suspect's story") (citation to quoted source omitted); *see also, e.g.*, Crockett v. Cumberland College, 316 F.3d 571, 582-83 (6th Cir. 2003) (finding probable cause, and noting that officer was not required to interview arrestee); Crouch, 2012 WL 6019296 at *7 (officer's failure to interview plaintiff, or any other witnesses, including citizen who called 911, did not undermine probable cause determination). "Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established." Crouch at *6 (citation to quoted source omitted); *accord* Pearson at *10 ("the protestations of innocence by an arrestee are so common as to be virtually a matter-of-course") (citation to quoted source omitted).

In the end, a triable issue of probable cause most often is marked by irregularities that, if present, should be readily apparent to the court. For example, probable cause is lacking when

6

an officer, "in the process of determining whether probable cause exists, . . . simply turn[s] a blind eye toward potentially exculpatory evidence known to [him] in an effort to pin a crime on someone." Stahl, 2012 WL 3668013 at *5 (citation to quoted source omitted) (emphasis added). Likewise problematic is an officer's reliance on witness statements that he or she knows to be unreliable. *See* Harris, 2012 WL 4109052 at *7; Franklin v. Miami Univ., 2007 WL 62706 , *3 (6th Cir. Jan. 8, 2007) (eyewitness identification insufficient if, at time of arrest, there was apparent reason for officer to believe that eyewitness was lying, witness did not accurately describe what she had seen, or was mistaken in recollection) (citation to quoted source omitted).

As will be seen below, none of these irregularities are apparent in this case, and Defendant is entitled to summary judgment.

## ANALYSIS

Much has been made of Plaintiff's statements that he was incapable of committing sexual abuse because he suffered erectile dysfunction. In the Court's view, Plaintiff has serious evidentiary problems in proving that his physical condition made perpetrating the crimes "impossible," and even greater difficulties in showing that Defendant knew, or should have known, that this was the case. Even resolving doubts in Plaintiff's favor, both reasonably and unreasonably, his position fails.

The Court finds persuasive, and therefore adopts, the reasoning in Wesley v. Rigney, 2012 WL 6600303 (E.D. Ky. Dec. 18, 2012). In Wesley, the plaintiff-school counselor argued that it would have been "literally impossible" for him to have sexually assaulted the victim-student because the place of the claimed assault, his office, was in close proximity to other offices and his conduct would have been readily detected. *See id.* at *3, 8. The court rejected the plaintiff's argument:

7

> As an initial matter, the [c]ourt need not accept as true [p]laintiff's assertion that it would have been "impossible" for the alleged sexual [assault] to have occurred[ because, on summary judgment, the court] need not accept as true . . . unwarranted factual inferences.
>
> [Even assuming as true that plaintiff's] office was in close proximity to other offices[, a]lthough this fact might show that it would be more difficult to commit the alleged sexual abuse, it by no means indicates that it would have been entirely impossible for the alleged abuse to have occurred.
>
> Therefore, any reasonable person would not know that this was the type of fact a judge would want to know in making a probable cause determination. In the end, a reasonable person would not have known that the omitted facts, even considered in their totality, were the type of facts that should be disclosed to a judge, or that a judge would want to consider.
>
> In submitting probable cause affidavits, officers are required to provide magistrates with the underlying facts and circumstances that support the [officer's] conclusions. . . . The officer is not, however, required to include all exculpatory evidence in the affidavit. . . . Requiring otherwise would place[ ] an extraordinary burden on law enforcement officers, compelling them to follow up and include in a warrant affidavit every hunch and detail of an investigation in the futile attempt to prove the negative proposition that no potentially exculpatory evidence had been excluded. . . . And because officers are not required to disclose all exculpatory information, they may only be sued under § 1983 for omitting exculpatory information from a probable cause affidavit if the omission showed reckless disregard for the truth. Plaintiff has simply failed to meet that standard . . . .

*Id.* at *8 (some alterations in original, citations to quoted and other sources omitted).

Plaintiff's theory fails for many of the same reasons. First, he is not entitled to the unwarranted conclusion that it was "impossible" for him to have engaged in sexual activity. Even assuming, moreover, that his condition would have made it less likely for him to have committed the alleged crimes, there is not one shred of evidence indicating that Defendant knew of Plaintiff's claimed erectile dysfunction, nor is there any basis for concluding that Defendant acted with reckless disregard in failing to uncover it. *See* discussion *supra* (probable cause does not require officer to hear or disprove arrestee's version of events). Finally, even assuming

8

Defendant was aware of Plaintiff's condition, the Court agrees with <u>Wesley</u> that excluding such information from the affidavit of probable cause, under these circumstances, would not rise to the level of reckless disregard. Plaintiff's "impossibility" arguments fall well short of defeating probable cause.

Similarly unpersuasive are Plaintiff's contentions that Defendant acted with reckless disregard in failing to reveal that the alleged victim's brother, Plaintiff's own son, opposed the alleged victim's version of events; that the alleged victim's diary was silent regarding the assaults; and that the alleged victim may have been traumatized by a prior sexual attack. Even assuming all of these facts to be true, and assuming Defendant was aware of them (an inference unwarranted by Plaintiff's evidence), the Court does not believe that an exclusion of these matters from Defendant's affidavit constituted reckless disregard. *See* discussions *supra*; *see also, e.g.*, <u>Wesley</u> at *7 (even though victim suffered pre-existing psychological and emotional problems, this did not reasonably indicate that he was lying or mistaken regarding current alleged assault).

Plaintiff's only remaining arguments relate to inconsistencies presumably known to Defendant through his communications with the alleged victim's case worker. Defendant and the case worker engaged in contemporaneous investigations, and Plaintiff tries mightily to impute statements made to the case worker into the mind of Defendant, and then to hold Defendant liable for not sifting through the collective informational pool in search of inconsistencies. These arguments fail.

Plaintiff's "evidence" regarding information-sharing between Defendant and the case worker is sketchy, at best, comprising of a handful of cryptic comments on call logs and contact summaries maintained by Defendant, the case worker and her supervisor. *See* Docs. 59-11,

59-13, 59-14, 59-15, 59-16 and 59-17.  On this scant documentary evidence, Plaintiff's counsel first attempts to show, through references to facsimile "to" and "from" transmission markings and the underlining of text on certain documents, that the *case worker* perceived discrepancies between the alleged victim's statements.  *See* Pl.'s Opp'n Br. at 5.  It is *Defendant's* knowledge, not the case worker's, that is relevant, however, and the only evidence identified by Plaintiff potentially addressing Defendant's knowledge is a single notation in a call-log regarding a communication between himself and the case worker on March 31, 2009.  *See* Doc. 59-17. In the call log, Defendant noted that the alleged victim had told the case worker that her brother "was across [the] street when [the] last incident occurred."  *See id.*  According to Plaintiff, this assertion was inconsistent with the alleged victim's statement to Defendant that her brother was "upstairs sleeping" during the incident.  *See id.* at 5-6 (arguing that Defendant should have identified this inconsistency in his affidavit of probable cause).

Plaintiff's counsel misreads the evidence.  Defendant's interview notes, and his affidavit of probable cause, do not say that the alleged victim stated that her brother was upstairs during the last assault.  What they say is that *Plaintiff* told the alleged victim, at the time of the assault, "Don't say anything, your brother is upstairs asleep."  *See* discussion *supra* (quoting affidavit of probable cause) *and* Doc. 59-16 at pg. 3 of 4 (Defendant's interview notes, stating same); *see also* Def.'s affid. of probable cause (identifying other purported statements of Plaintiff discouraging revelation of purported crime, *e.g.*, "don't tell anyone, I'll get in trouble, and you will get in trouble").  Although this may seem a fine distinction, it serves only to demonstrate the impropriety of indulging the type of "Monday-morning quarterbacking" relied upon by Plaintiff. *See* discussions *supra* (court may not properly view circumstances before arrest "as an

omniscient observer would perceive them," or evaluate the officer's performance "with the benefit of 20/20 hindsight").[4]

More importantly, perceived discrepancies in the alleged victim's statements regarding where her brother was during one of many alleged sexual assaults are, in the Court's view, inconsequential in comparison to the defining discrepancy between the accuser and the accused, namely, whether Plaintiff sexually assaulted the alleged victim. Defendant acted within his discretion in assessing the alleged victim's credibility, and the probable cause requirement did not demand that he "correctly resolve conflicting evidence," nor did it require "that [his] determination [was], in retrospect, accurate." *See* discussions *supra* (police officers' "function is to apprehend those suspected of wrongdoing, . . . <u>not to finally determine guilt through a weighing of the evidence</u>") (emphasis added); *compare also* Def.'s affid. of probable cause (stating that, after describing assaults during interview with Defendant, alleged victim "was visibly upset," "crying and shaking") *with, e.g.*, discussion *supra* (officer may "assess the victim's demeanor, find the story credible, and rely on the identification to make an arrest").

Finally, even were the Court to infer, *unreasonably* in its view, that Defendant was aware of every discrepancy that Plaintiff now identifies, the undersigned cannot agree that Defendant lacked probable cause to arrest Plaintiff or that Defendant acted with reckless disregard in

---

[4] Of course, another explanation for the perceived discrepancies may be that the alleged victim was simply, and innocently, mistaken. *See generally* Dep. Tr. of A. Harnett (filed under Doc. 61-3) at 86 (testifying that, in her experience, child-victims' accounts of abuse, reported through multiple interviews and years after the fact, may vary somewhat). And though mistaken recollection is one grounds for deeming eyewitness testimony unreliable, *see* discussion *supra*, the Court does not read the case law to demand that a witness's statements must be consistent on each and every point, in each and every way. Probable cause is examined under a totality-of-the-circumstances standard, and Defendant's omission of the discrepancies alleged by Plaintiff would not, under the circumstances presented, rise to the level of reckless disregard. *See* discussions *supra* and *infra*.

11

omitting the perceived discrepancies.[5]

In sum, Plaintiff has failed to identify any of the irregularities commonly associated with a lack of probable cause. There is no indication that Defendant (or the case worker) "turn[ed] a blind eye toward potentially exculpatory evidence . . . in an effort to pin a crime on someone" who did not commit it. *See* discussion *supra*. There is no basis for concluding that Defendant acted with reckless disregard in believing the alleged victim, nor was Defendant compelled to conclude that the alleged victim was lying, that she had not accurately described what had happened or that she was mistaken in any material respect. When reading the evidence in a light most favorable to Plaintiff, the best he could hope to accomplish would be to convince a fact finder that, in this inherently "he said, she said" scenario, Defendant believed the wrong person.[6]

For all of the reasons stated above, Plaintiff has failed to convince the Court that his arrest lacked the support of probable cause. As a result, Defendant is entitled to summary judgment on all of Plaintiff's remaining claims. *See* discussions *supra*; *compare also* Compl. at Counts V & VI (alleging state law claims of malicious prosecution and false imprisonment) *with* Turosik v. Hougue, 2011 WL 1044648, *11 (W.D. Pa. Mar. 18, 2011) (where probable

---

[5] The Court also expressly rejects Plaintiff's suggestion that, because Defendant was aware of a purported discrepancy between the alleged victim's statements regarding the whereabouts of her brother during one alleged assault, it reasonably may be inferred that Defendant was aware of all other purported inconsistencies now identified by Plaintiff. That would not be a matter of inference, but speculation.

[6] Although irrelevant to the Court's legal analysis, there is a striking lack of evidence, or even insinuation, that Defendant approached his investigation with any purpose other than to fulfill his law-enforcement duties and to protect the welfare of a child-victim. *Cf.* Pl.'s Opp'n Br. (failing to suggest that Defendant acted with questionable motivate, ill-will or unjustified focus on expediency in resolving allegations). While the exclusion of such allegations is understandable, given the irrelevancy of Defendant's subjective intent, the absence of *any* narrative explaining why this case was anything more than a wrongly-decided "he said, she said" determination (according to Plaintiff and with the benefit of hindsight, that is) only serves to emphasize the weakness of his case.

cause to arrest defeats Section 1983 claims for false arrest and malicious prosecution, analogous state law claims likewise fail).

For all of the reasons stated above, the Court hereby enters the following:

## II. <u>ORDER</u>

Defendant's Motion for Summary Judgment (**Doc. 55**) is **GRANTED**.


June 25, 2013                                        s\Cathy Bissoon
                                                     Cathy Bissoon
                                                     United States District Judge

cc (via ECF email notification):

All Counsel of Record